UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
EVERETTE WEAVER,

                                Plaintiff,

                -against-                              **REPORT AND**
                                                      **RECOMMENDATION**
                                                      20 CV 1082 (EK) (CLP)
ROGER E SIEGEL, ESQ., et al.,

                                Defendant(s).
-----------------------------------------------------------X
**POLLAK**, Chief United States Magistrate Judge:

On February 27, 2020, plaintiff Everette Weaver ("plaintiff"), appearing pro se, filed this

suit against Roger E. Siegel, Esq. ("Siegel"), John Seymour James, Esq. ("James"), Elma Eileen

Gibbs, Shelly Gibbs, Darrell Parker, Michael Gibbs, Robert M. Link, Esq. ("Link"), Sophia

Maloney, and David A. Gallo & Associates, LLP ("Gallo & Associates") (collectively,

"defendants"), alleging "violations of New York Judiciary Law § 487 (1), [c]riminal facilitation

which led to negligence, racketeering, violations of the Fair Debt Collection Practices Act,

conversion, and intentional infliction of emotional distress." (Compl.[1]).  Plaintiff alleges that the

Court has jurisdiction "under 28 U.S.C. § 1331 because there are questions arising under Federal

Law, 18 U.S.C. § 1961 et Seq. [sic] (RICO), and 15 U.S.C. § 1692e (FDCPA)."  (Id. ¶ 1).

Furthermore, plaintiff claims that this Court has supplemental jurisdiction over the state law

claims pursuant to 28 U.S.C. § 1367.  (Id. ¶ 2).

The Court respectfully recommends, for the reasons set forth below, that plaintiff's

Complaint be dismissed in its entirety for lack of subject matter jurisdiction.  In the alternative,

plaintiff's Racketeer Influenced and Corrupt Organization Act ("RICO") and Fair Debt

---

[1] Citations to "Compl." refer to Mr. Weaver's Complaint, filed by plaintiff on February 27, 2020, ECF No. 1.

Collection Practices Act ("FDCPA") claims are subject to dismissal for failure to state a claim under Rule 12(b)(6).  Finally, the Court recommends that the court decline to exercise supplemental jurisdiction over the remaining state law claims.

FACTUAL BACKGROUND

Plaintiff alleges that, in 1999, shortly before his death, Vernon Ifill added his home attendant, Elma Gibbs, to the deed of Ifill's home, located at 489 Classon Avenue.  (Compl. ¶¶ 14-15).  According to plaintiff, Elma Gibbs then borrowed money against 489 Classon Avenue in order to "pay Coyotes" to smuggle her daughter, Shelly Gibbs, and Shelly Gibbs' four children from Barbados.  (Id. ¶ 16).  Elma Gibbs then borrowed additional money against 489 Classon Avenue for food and sham marriages for Shelly Gibbs and her four children, who plaintiff claims are "undocumented immigrants."  (Id. ¶ 17).  Plaintiff alleges that Elma Gibbs purchased false documentation papers, and that Shelly Gibbs and her family used false documents in order to obtain public assistance.  (Id. ¶¶ 20-21, 23).  According to plaintiff, Elma Gibbs failed to make the mortgage payments owed on the property located at 489 Classon Avenue and subsequently sold the property to Colleen Whyte, who allowed Elma Gibbs to continue residing there as a tenant.  (Id. ¶ 24).  In 2005, Whyte eventually sold the property to Better Homes Depot.  (Id. ¶ 31).

In 2008, plaintiff, along with a co-borrower, Leola Paul, purchased the property located at 489 Classon Avenue from BHW Management, Inc. for $680,000.  (Id. ¶ 34).  After his purchase of 489 Classon Avenue, plaintiff went to the house in order to hang a for-sale sign on the property.  (Id. ¶ 35).  Shelly Gibbs asked plaintiff why the for-sale sign was placed upon her mother's property and subsequently called her lawyer, John James.  (Id. ¶¶ 34-36).  Plaintiff alleges that John James advised Shelly Gibbs to have her husband, Darrell Parker, assault

plaintiff.  (Id. ¶ 37).  According to the plaintiff, Parker arrived at the property with Michael

Gibbs and an unidentified man; together, they beat plaintiff, knocking out two of his teeth.  (Id. ¶

38).  Shelly Gibbs called the police and reported that plaintiff was beating up tenants at the

subject property.  (Id. ¶ 39).  When the police arrived, they arrested plaintiff as the three men

attacking him fled.  (Id. ¶ 40).  Plaintiff spent 25 hours in jail and was charged with assault,

menacing, and resisting arrest for having punched Sophia Maloney.  (Id. ¶¶ 41-43).  Plaintiff

alleges that Elma Gibbs and Sophia Maloney engaged in perjury in violation of New York Law,

causing plaintiff to be wrongly arrested and jailed.  (Id. ¶ 63).

In 2009, plaintiff hired a law firm to evict the tenants of 489 Classon Avenue.  (Id. ¶ 46).

As a result of plaintiff's action, John James sought to stay the evictions in Better Homes Depot v.

Whyte.  (Id. ¶ 47).  However, according to plaintiff, the lis pendens filed by John James was

defective because no filing fee was paid and there was a fraudulent stamp on the lis pendens.

(Id. ¶¶ 49-52).  Elma Gibbs then filed a motion seeking an order declaring that plaintiff could not

obtain title from BHW Management, Inc. because BHW Management lacked good title

necessary to convey the property to plaintiff.  (Id. ¶ 53).

Leola Paul, the alleged co-owner of the property along with plaintiff, died in 2011.  (Id. ¶

65).  She transferred her ownership in 489 Classon Avenue to Michael Paul, who transferred it to

212 First Holding Corp. (Id. ¶ 66).  Plaintiff claims that Elma Gibbs and her family have lived in

his home without paying rent for more than 11 years.  (Id. ¶ 67).  Moreover, he claims that they

rent out some of the apartments in 489 Classon Avenue to other people, which plaintiff describes

as "conversion."  (Id. ¶ 70).

In 2009, CitiMortgage initiated foreclosure proceedings with respect to 489 Classon

Avenue, which was dismissed on appeal.  (Id. ¶ 144).  Roger E. Siegel represented the Gibbs

family in that foreclosure action, while Robert Link of David A. Gallo & Associates, LLP

represented CitiMortgage.  (Id. ¶¶ 138, 147).  Plaintiff alleges that Robert Link of David A.

Gallo & Associates on behalf of CitiMortgage, John James on behalf of the Gibbs, and Roger E.

Siegel on behalf of the Gibbs made false representations or abused the legal process throughout

these legal proceedings.  (See, e.g., id. ¶¶ 139, 153, 155, 159).  Finally, plaintiff seeks to have

this Court "comply with President Trump's Executive Order 13768" and deport Shelly Gibbs

and her children.  (Id. ¶ 178).

   Plaintiff brings six causes of action.  Plaintiff's first count raises claims under New York

Judiciary Law § 487(1), alleging that due to various fraudulent acts and misrepresentations on

the part of the defendant attorneys involved in his dispute over the subject property, 489 Classon

Avenue, the courts have been deceived.  (Id. ¶¶ 181-197).  Count Two alleges violations of the

FDCPA.  (Id. ¶¶ 198-205).  Plaintiff claims that defendants Link and Gallo & Associates have

prosecuted frivolous foreclosures and sales in violation of the FDCPA.  (Id.)  The third count,

entitled "Negligence," alleges that defendants James, Elma Gibbs, Maloney, Siegel, Link, and

Gallo & Associates provided false statements to the police, which induced plaintiff's arrest and

caused his injury.  (Id. ¶¶ 207-227).  In the fourth count, plaintiff argues that, pursuant to RICO,

18 U.S.C. § 1961 et seq., defendants Siegel, James, Elma Gibbs, Shelly Gibbs, Darrell Parker,

and Maloney manufactured a fake lis pendens, falsely claimed the property was stolen, and

executed false affidavits in order to sell or continue to live at 489 Classon Avenue, defrauding

plaintiff of rent payments.  (Id. ¶¶ 228-247).  Plaintiff claims these defendants are an enterprise.

(Id.)  Count Five alleges that defendants James, Siegel, Elma Gibbs, Shelly Gibbs, Parker, and

Michael Gibbs illegally converted plaintiff's property by "interfer[ing] with plaintiffs [sic] legal

ownership and further exercis[ing] dominion over the property, in derogation of plaintiff's

rights."  (Id. ¶ 262).  Finally, in Count Six, plaintiff claims that defendants Siegel, James, Elma

Gibbs, Shelly Gibbs, Parker, and Maloney had him beaten and arrested, ruined his "credit

worthiness," failed to pay him rent, and acted in a manner that was extreme and outrageous, causing him severe emotional distress.  (Id. ¶¶ 268-278).

## PROCEDURAL HISTORY

This is far from the first action brought by Mr. Weaver relating to the purchase of 489 Classon Avenue and the subsequent foreclosure proceedings relating to that property.

The initial contract action, commenced in state court in 2006, related to a dispute over title to an apartment at 489 Classon Avenue.  See Better Homes Depot, Inc. v. Whyte, et al., No. 25309/2005 (N.Y. Sup. Ct. filed Mar. 27, 2006) (WL, DOCK-NY-STCTS).  Mr. Weaver claims that he purchased the property in a foreclosure action on August 28, 2008, after the state court case had commenced, and then attempted to evict the tenants.  All evictions were stayed by Justice Kurtz on January 2009, at which point the case was transferred to Justice Hinds-Radix and then later to Justice Battaglia.

On June 16, 2009, plaintiff filed a Section 1983 action in the Southern District of New York against Justices Kurtz, Hinds-Radix, and Battaglia, alleging violations of his constitutional rights relating to their handling of the initial contract case.  See Weaver v. Hinds-Radix, et al., No. 09 CV 5529 (S.D.N.Y. Sept. 8, 2010) (WL, DOCK-NY-SDCT).  On September 8, 2010, the district judge dismissed the plaintiff's Complaint.  (Id.)

On October 16, 2009, plaintiff filed a second action in the Southern District of New York, raising claims against Justices Hinds-Radix and Kurtz and attorney John James under the Racketeer Influenced and Corrupt Organizations Act (RICO).  See Weaver v. James, et al., No. 09 CV 8816 (S.D.N.Y. Jan. 14, 2010).  This action was dismissed as outside the court's jurisdiction pursuant to the Rooker-Feldman doctrine.

On January 6, 2010, the state court case was transferred to Justice Vaughan.  Plaintiff attempted to remove the case before Justice Vaughan to federal court.  See Better Homes Depot,

Inc. v. Weaver, et al., No. 10 CV 3246, 2010 WL 2977447 at *2 (E.D.N.Y. July 21, 2010).

Plaintiff's motion for removal was denied for lack of original federal jurisdiction.  (Id.)

Plaintiff filed another action in the Southern District of New York in September 2010.

Brought against attorney John James among others, this action alleged RICO violations against

the defendants for "engag[ing] in a conspiracy to deprive him of rent for property plaintiff

purchased in foreclosure."  Weaver v. James, et al., No. 10 CV 6609, 2011 WL 4472062, at *1

(S.D.N.Y. Sept. 27, 2011).  Additionally, plaintiff asserted state law causes of action for

professional negligence, fraud, malicious abuse of process, and more.  (Id.)  In the 2010

Southern District complaint, as here, plaintiff alleged that James filed a "bogus" lis pendens.[2]

(Id. at 2).  The court dismissed the action for lack of subject matter jurisdiction because

plaintiff's claims were "so patently without merit as to justify the court's dismissal for want of

jurisdiction."  (Id. (quoting Town of West Hartford v. Operation Rescue, 915 F.2d 92, 100 (2d

Cir. 1990))).

On July 8, 2011, plaintiff brought another action in this Court against Justices Hinds-

Ratix and Vaughan, alleging that they had violated plaintiff's constitutional rights.  This action

was dismissed on various grounds, including the Court's finding that none of plaintiff's

allegations stated a plausible claim and some of plaintiff's claims were estopped on the grounds

of res judicata.  See Weaver v. Vaughan, No. 11 CV 3821, 2012 WL 4465255 (E.D.N.Y. Aug.

---

[2] Attorney John James, also a defendant in the Complaint filed in the instant action, had
this claim brought against him once before in this Court, when plaintiff claimed that he
"manufactured a lis pendens" to present to Justice Kurtz in support of an order to stay evictions on
the property.  Weaver v. Vaughan, No. 11 CV 3821, 2012 WL 4465255, at *1 n. 5 (E.D.N.Y. Aug.
30, 2012).  So too, the claims against James are the same as plaintiff asserted against him in the
Southern District of New York, which – as discussed above – were ultimately dismissed for lack
of subject matter jurisdiction.  See Weaver v. James et al., No. 10 CV 6609, 2011 WL 4472062,
at *1 (S.D.N.Y. Sept. 27, 2011).

30, 2012). In adopting this Court's Report and Recommendation, recommending dismissal, the Honorable Carol B. Amon held that plaintiff may not file additional lawsuits in the Eastern District of New York "against any judicial officer or other individual or entity related in any way to (1) [plaintiff]'s alleged purchase of property at 489 Classon Avenue in Brooklyn, New York, or (2) the pending state court contract action in the Supreme Court of the State of New York in Kings County," Better Homes Depot, Inc. v. Gibbs et al., without first obtaining permission by the court. Supplemental Order, No. 11 CV 3281, at *1 (E.D.N.Y. Oct. 1, 2012).

On February 12, 2016, plaintiff, proceeding pro se, filed yet another federal action against various lawyers and financial institutions, alleging violations of the FDCPA, RICO, the New York General Business Law, civil conspiracy pursuant to N.Y. Penal Law § 105.25, and 18 U.S.C. § 371, premised on the 2009 foreclosure action relating to 489 Classon Avenue. Weaver v. Boriskin, No. 16 CV 688, 2017 WL 5201433, at *8 (E.D.N.Y. Sept. 30, 2017), affirmed in part, Weaver v. Boriskin, 751 Fed. App'x 96 (2d Cir. 2018). The case was ultimately dismissed on March 20, 2020, based on Judge Amon's finding that the plaintiff had failed to sufficiently plead the existence of an "enterprise," a "pattern of racketeering activity," mail and wire fraud, and continuing criminal activity, all necessary to allege a violation of RICO.[3] The Court also dismissed plaintiff's FDCPA claims, finding that each of the defendants' alleged actions in the foreclosure litigation, which plaintiff claimed was in violation of the FDCPA, were premised on

_____

[3] Defendants in that case, as here, argued that plaintiff violated Judge Amon's injunction in Weaver v. Vaughan. However, there, Judge Amon found that the defendants relied "on an overly expansive reading of the Court's injunction," given that the claims in Weaver v. Boriskin were related to the "purportedly fraudulent foreclosure proceedings" having "only a tenuous relationship to" claims related to the purchase of the property enjoined by her previous Order. Weaver v. Boriskin, 2017 WL 5201433, at *4. Because plaintiff's claims appear to be related to the foreclosure proceedings, as well as the purchase of the property, the Court does not opine on whether plaintiff's current Complaint violates the injunction.

misrepresentations taking in place in 2009, and thus were time-barred. <u>Weaver v. Boriskin</u>, 2017 WL 5201433, at *8; <u>see also</u> <u>Weaver v. Boriskin</u>, 751 F. App'x at 98-99 (affirming the dismissal of Weaver's FDCPA claims that were premised on events that occurred before February 2015, based on the finding that they were barred by the one-year statute of limitations applicable to FDCPA claims). Finally, Judge Amon declined to exercise supplemental jurisdiction over Weaver's remaining state law claims. <u>Weaver v. Boriskin</u>, 2017 WL 5201433, at *8.

<u>DISCUSSION</u>

Plaintiff's current lawsuit raises many of the same problems identified by the numerous courts that have addressed his claims in prior litigation.

As an initial matter, the court has the power to dismiss a complaint sua sponte for failure to state a claim. <u>See</u> <u>Leonhard v. United States</u>, 633 F.2d 599, 609 n. 11 (2d Cir. 1980). So too, "the Court may examine subject matter jurisdiction, sua sponte, at any stage of the proceeding." <u>Federal Deposit Insurance Corp. v. Four Star Holding Co.</u>, 178 F.3d 97, 100 n. 2 (2d Cir. 1999) (quoting <u>FW/PBS, Inc. v. City of Dallas</u>, 493 U.S. 215, 231, 110 S. Ct. 596, 607 (1990) (holding that "federal courts are under an independent obligation to examine their own jurisdiction")). As a threshold question, this Court must analyze whether subject matter jurisdiction exists here. Plaintiff's federal claims, however, are "so patently without merit" that the Court may dismiss this case for want of jurisdiction. <u>Town of West Hartford v. Operation Rescue</u>, 915 F.2d at 100. Moreover, as set forth below, the Court also finds that plaintiff's federal claims are subject to dismissal under Rule 12(b)(6) because they fail to set forth sufficient facts to state a plausible claim under either the FDCPA or RICO. Additionally, plaintiff's FDCPA claims are time-barred. Since the Court is respectfully recommending the dismissal of the federal claims, the

Court also recommends that the court decline to exercise supplemental jurisdiction and dismiss the remaining state law claims for lack of jurisdiction.

A.  Subject Matter Jurisdiction

To begin, the Court recommends dismissal for lack of subject matter jurisdiction.  As perhaps can be gleaned from the recitation of the facts and the lengthy procedural history here, plaintiff's Complaint is yet another attempt to relitigate the assault and foreclosure action that belonged in, and was litigated in, state court.  Indeed, plaintiff merely re-packages many claims brought and dismissed in both state and federal courts prior to this action.  Many of plaintiff's claims are not federal claims at all but state law claims postured as federal ones.  As discussed further in the analysis of plaintiff's FDCPA and RICO causes of action, "the substance of plaintiff's claim is not a [federal] violation over which we have subject matter jurisdiction," but a state law claim "over which we do not."  Weaver v. James, et al., 2011 WL 4472062, at *4.

"In order for the Court to have subject matter jurisdiction pursuant to 28 U.S.C. § 1331, (1) the claim must turn on an interpretation of the laws or Constitution of the United States, and (2) the claim must not be one that is 'patently without merit.'  To be patently without merit, a claimed right must be so 'insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy.'"  Saleh v. Ridge, 367 F. Supp. 2d 508, 511–12 (S.D.N.Y. 2005) (citations omitted).  Plaintiff alleges violations of the FDCPA for the continuation of and the maintenance of the foreclosure action by attorneys involved in his initial state court case.  His claim of RICO violations also originates in his state law claims.  His FDCPA and RICO claims, thus, boil down to an attempt to relitigate the same foreclosure action; indeed, some of those claims appear to be exactly the same as those that have been brought and previously dismissed in the Southern

District, making those claims subject to estoppel as well.  <u>Weaver v. James, et al.</u>, 2011 WL 4472062, at *4.  There, the court found that the claims were "so patently without merit as to justify the court's dismissal for want of jurisdiction."  <u>Id.</u> at *1.  Since the claims in the instant case are based on the same allegations, they are equally "facially insubstantial and devoid of merit and federal controversy."  <u>Fetman v. Lipnitsky</u>, No. 15 CV 5543, 2015 WL 6455186, at *2 (E.D.N.Y. Oct. 26, 2015).  The filing of this Complaint appears to be merely another attempt to circumvent the decisions of prior courts who have reviewed these claims.   Thus, the Court respectfully recommends the dismissal of the federal claims, sua sponte, for lack of subject matter jurisdiction.

### B.  <u>Plaintiff's Federal Claims Also Fail to State a Claim</u>

Even if the plaintiff could demonstrate that subject matter jurisdiction existed over the federal claims in this case, the claims are still subject to dismissal under Rule 12(b)(6).

### 1.  <u>Legal Standard</u>

A plaintiff must allege "sufficient factual matter" to "nudge[]" his claims "across the line from the conceivable to plausible."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-80 (2009) (quoting <u>Bell Atl. Com. v. Twomblv</u>, 550 U.S. 544, 570 (2007)).  A court, using its "experience and common sense," must determine whether liability is a "reasonable inference" from the allegations.  (<u>Id.</u> at 678-79).  The Court must dismiss the Complaint if its "well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct . . ."  (<u>Id.</u> at 679).  The Court also is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555.

When deciding whether to dismiss a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Second Circuit has stated that a court must "accept

as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993); see also Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2007), cert. denied, 553 U.S. 1093 (2008).  The court must give plaintiff's claims "a liberal construction."  Johnson v. New York City Transit Auth., 639 F. Supp. 887, 891 (E.D.N.Y. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)), aff'd in part and vacated in part on other grounds, 823 F.2d 31 (2d Cir. 1987).

When evaluating a dismissal under Rule 12(b)(6), Ashcroft v. Iqbal has "arguably shift[ed] pleading standards from 'simple notice pleading' to a 'more heightened form of pleading.'"  Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 214 (S.D.N.Y. 2010) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009)).  Now, the court considers whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678; see also Hayden v. Paterson, 594 F.3d 150, 160-61 (2d Cir. 2010).  Under this heightened pleading standard, labels, conclusions, and mere recitation of the elements of a cause of action will not suffice.  Ashcroft v. Iqbal, 556 U.S. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. at 545.  Instead, a plaintiff must provide enough factual support that, if true, would "raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555.

"[P]lausibility" requires "'more than a sheer possibility that a defendant has acted unlawfully.'"  Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d at 215 (quoting Ashcroft v. Iqbal, 556 U.S. at 678).  When the well-pleaded facts allow no more than an

inference of a "mere possibility of misconduct" and plaintiff has only alleged, rather than shown, an entitlement to relief, the federal pleading standard of Rule 8(a)(2) has not been satisfied. Ashcroft v. Iqbal, 556 U.S. at 679.

Although a pro se litigant's pleadings are subject to the same rules, pro se complaints "'are held to less stringent standards than formal pleadings drafted by lawyers.'" Oyekoya v. United States, 108 F. Supp. 2d 315, 317 (S.D.N.Y. 2000) (quoting Santiago v. Meinsen, 89 F. Supp. 2d 435, 438 (S.D.N.Y. Feb. 25, 2000)). Since the plaintiff here is proceeding pro se, the Court is mindful that it is "'obliged to construe his pleadings liberally.'" Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) (quoting McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004)). The Court also recognizes that it must interpret these pleadings "to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (citations omitted).

2. Analysis

   a. Count Two – The Fair Debt Collection Practices Act Claim

Plaintiff's FDCPA claim should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that plaintiff has failed to adequately allege specific facts necessary to "state a claim to relief that is plausible on its face." See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). Moreover, consistent with the prior rulings of this Court and the Second Circuit on appeal in Weaver v. Boriskin, 751 Fed. App'x 96, the FDCPA claims are based on conduct arising prior to 2019 and are subject to dismissal as time-barred.

The FDCPA was enacted in order to "eliminate abusive debt collection practices by debt collectors . . ." 15 U.S.C. § 1692(2); see also Forman v. Academy Collection Serv., Inc., 388 F.

Supp. 2d 199, 202 (S.D.N.Y. 2005) (explaining that the FDCPA "was designed to protect consumers from unscrupulous collectors whether or not there is a valid debt").  "The FDCPA prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses[,] or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures."  Forman v. Academy Collection Serv., Inc., 388 F. Supp. 2d at 202 (citing 15 U.S.C. §§ 1692d, 1692e, 1692f); see also Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643, 653 (S.D.N.Y. 2006).

Generally, a plaintiff must satisfy three threshold requirements in order to recover under the FDCPA: "(1) [T]he plaintiff must be a 'consumer;' (2) the defendant must be a 'debt collector;' and (3) the defendant must have committed some act or omission in violation of the FDCPA."  Oscar v. Professional Claims Bureau, Inc., No. 11 CV 5319, 2012 WL 2367128, at *3 (E.D.N.Y. June 1, 2012).  "As the statute is intended to protect consumers and prevent abusive practices, the statute must be liberally construed in favor of consumers."  Cerrato v. Solomon & Solomon, No. 11 CV 623, 2012 WL 6621339, at *5 (D. Conn. Dec. 18, 2012) (interpreting Second Circuit precedent) (citations omitted); see also Foti v. NCO Fin. Sys., Inc., at 655 (stating that "[t]he Second Circuit [] has warned debt collectors against loosely interpreting the FDCPA") (quoting Cavallaro v. Law Office of Shapiro & Kreisman, 933 F. Supp. 1148, 1153 (E.D.N.Y. 1996)).

Plaintiff's FDCPA claim appears to be focused on the 2009 foreclosure proceedings initiated by CitiMortgage with respect to 489 Classon Avenue, which plaintiff claims to have purchased in 2008.  (Id. ¶¶ 144, 199).  Plaintiff claims that defendants Link and Gallo & Associates violated the FDCPA by continuing the prosecution of "the frivolous foreclosure action" through legal filings.  (Id. ¶¶ 201-203).

Although it is true that a New York foreclosure proceeding constitutes a debt collection under the FDCPA because "every mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt," Cohen v. Rosicki, Rosicki & Assocs., P.C., 897 F.3d 75, 83 (2d Cir. 2018), a plaintiff is required to commence a FDCPA action "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Here, the actions upon which plaintiff premises his FDCPA claims all occurred in 2009 or earlier, outside of the one-year statute of limitations.

In her recent Order in Weaver v. Boriskin, Judge Amon observed that "[n]o court of appeals has held that debt-collection litigation (or a misleading statement made in connection with that litigation) is a continuing violation of the FDCPA." No. 16 CV 688, at *6 (E.D.N.Y. Mar. 10, 2020) (citing Slorp v. Lemer, Sampson & Rothfuss, 587 F. App'x 249, 257 (6th Cir. 2014)). The filing of any one document within a lawsuit does not begin the one-year statute of limitations; rather, an FDCPA claim premised on the fraudulent filing of a debt collection suit begins to run when the complaint is filed or when the debtor receives notice of the action. Id. (citing Oliver v. U.S. Bancom, No. 14 CV 8948, 2015 WL 4111908, at *2 (S.D.N.Y. July 8, 2015); DeJesus v. BAC Home Loans Servicing, LP, No. 13 CV 2864, 2014 WL 4804999, at *4 (E.D.N.Y. Sept. 26, 2014); Sierra v. Foster & Garbus, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1999); Calka v. Kucker. Kraus & Bruh. LLP, No. 98 CV 0990, 1998 WL 437151, at *3 (S.D.N.Y. Aug. 3, 1998)). In other words, a subsequent filing in an allegedly fraudulently filed debt-collection proceeding must independently violate the FDCPA in order to commence the running of its own statute of limitations. Id. (citing Ehrich v. RJM Acquisitions LLC, No. 09 CV 2696, 2009 WL 4545179, at *2 (E.D.N.Y. Dec. 4, 2009)).

Here, plaintiff's Complaint lacks any allegations that the filings of defendants Link and Gallo & Associates independently violated the FDCPA.  Unlike the allegations in <u>Weaver v. Boriskin</u>, where plaintiff appears to have referred to specific filings, <u>see</u> 751 Fed. App'x at 99 (noting that the "'allegations are that the defendants maintained the fraudulent foreclosure action by filing an order to show cause, using connections to change the judge overseeing the foreclosure, and filing and prosecuting a motion for summary judgment'"), here, plaintiff merely alleges that defendants "continued" the allegedly fraudulent foreclosure action, without specifying any particular fraudulent or misleading representation that might constitute a separate violation of the FDCPA, beyond the 2009 commencement of the state court foreclosure action. In the Complaint, plaintiff alleges that defendants Link and Gallo & Associates "continued prosecution of the frivolous foreclosure action for seeking a judgment of foreclosure & sale with intent to circumvent Judge Loren Baily-Schiffman's April 29, 2016 order, Judge Diana Johnson's April 27, 2017 decision & order, and Judge Richard Montelione's October 1, 2019 order & judgment is a violation of the Fair Debt Collection Practices Act."  (Compl. ¶ 201). Plaintiff further alleges that defendants Link and Gallo & Associates "continued prosecution of the frivolous foreclosure action for seeking a judgment of foreclosure & sale, and their failure to serve the Estate of Leola Paul with their motion is a violation of the FDCPA, and further the defendants knew that all proceedings are stayed by the death of a litigant."  (Compl. ¶ 202). These allegations, however, fail to contain non-conclusory facts.

Drawing inferences in favor of the plaintiff, as required, the Court notes that some of plaintiff's allegations may be interpreted to allege that specific filings made by defendants were fraudulent:  plaintiff claims that defendants' "actions of maintaining the frivolous foreclosure action, opposing plaintiff's motion for relief, and seeking a judgment of foreclosure of sale, even

though the defendants knew that all proceedings are stayed by the death of a litigant, and the fact

that the Deed from Michael Paul to 212 First Holding was expunged by Judge Montelione,

constitute a false, deceptive, and/or misleading practice in attempt to collect a debt, in violation

of the FDCPA, 15 U.S.C. § 1692e." (Compl. ¶ 203). However, these allegations do not allege an

independent violation of the FDCPA. Indeed, by plaintiff's own words, his allegations are

premised on defendants' actions from 2009 in that they "continued" the allegedly fraudulent

foreclosure action or that their actions were aimed at "maintaining the frivolous foreclosure

action." (Compl. ¶¶ 202, 203).

To the extent that those allegations do cite specific filings, all of those filings stem from

the initial foreclosure proceeding and none of them constitutes an *independent violation* of the

FDCPA. The Court reviews below those specific filings: first, plaintiff alleges that defendant

Link "filed a motion to confirm the Referee report and for a judgment of foreclosure and sale" on

November 26, 2019 in violation of the FDCPA. (Compl. ¶¶ 11, 147). Next, plaintiff appears to

allege that the actions of Nina Khaimova of defendant Gallo & Associates in filing "a motion in

2015 to add 212 First Holding as a necessary party which induced Judge Genovese to add 212 as

a party defendant" are a violation of the FDCPA. (Compl. ¶ 154).

i.)    Motion to Confirm the Referee Report

In his Complaint, plaintiff alleges that the Notice of Motion to Confirm Referee Report

and For a Judgment of Foreclosure and Sale ("Notice to Confirm Referee"), filed by defendant

Link, an employee of Gallo & Associates, on November 26, 2019 constitutes a violation of the

FDCPA. Plaintiff alleges that Link filed this "frivolous motion" in order to "continue" or

"maintain" the prosecution of the foreclosure action. (Compl. ¶¶ 201-203). As plaintiff's

allegation regarding this filing "depends on the merits of Weaver's time-barred claims related to

16

the initiation of the foreclosure action in 2009," <u>Weaver v. Boriskin</u>, No. 16 CV 688, at *7 (E.D.N.Y. Mar. 10, 2020), the motion to confirm the referee report is not a "new, discrete misrepresentation," <u>Ellis v. Gen. Revenue Corp.</u>, 274 F.R.D. 53, 58 (D. Conn. 2011), that would independently violate the FDCPA.  Again, by his own words, plaintiff's allegations as to Link hinge on a violation that is much older than one year – the initiation of the foreclosure action in 2009.  Without any allegations that Link's actions since 2009 have constituted a "false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, the FDCPA claims against Link, premised on such filings, are time-barred. Moreover, the Court notes that plaintiff's allegations as to the FDCPA violations of defendant Link are also defective in that they are conclusory in nature and do not supply more than a "mere possibility of misconduct."  Indeed, plaintiff does not identify any specific misrepresentations or false or misleading statements in the Notice to Confirm that would be an independent FDCPA violation.  Thus, the allegations based on the filing of the Notice to Confirm do not support a claim based on a new FDCPA violation.

<p style="margin-left:2em;">ii.) <u>Motion to Add 212 First Holding as a Necessary Party</u></p>

On its face, plaintiff's allegation regarding the motion filed by Nina Khaimova of defendant David A. Gallo & Associates to add 212 First Holding as a necessary party is time-barred as it was filed in 2015.  Moreover, there is no allegation that this filing was a new or discrete misrepresentation, <u>Ellis v. Gen. Revenue Corp.</u>, 274 F.R.D. at 58, apart from the filing of the foreclosure action.  As such, the Court respectfully recommends that plaintiff's FDCPA claims should be dismissed.

b. <u>Count Four – Racketeer Influenced Corrupt Organization Act Claim</u>

Plaintiff's RICO claim should likewise be dismissed.  As discussed in <u>Weaver v.</u>
<u>Boriskin</u>, 751 Fed. App'x 96, 98 (2d Cir. 2018), to establish a civil RICO violation, "a plaintiff
must show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a
pattern (4) of racketeering activity."  (<u>Id.</u> (quoting <u>Cofacredit, S.A. v. Windsor Plumbing Supply</u>
<u>Co.</u>, 187 F.3d 229, 242 (2d Cir. 1999) (quoting <u>Azrielli v. Cohen Law Offices,</u> 21 F.3d 512, 520
(2d Cir. 1994))).

To begin, plaintiff has failed to demonstrate that defendants are an enterprise as defined
by 18 U.S.C. § 1961(4).  A RICO enterprise "includes any individual, partnership, corporation,
association, or other legal entity, and any union or group of individuals associated in fact
although not a legal entity."  18 U.S.C. § 1961(4).  Since defendants are not a single legal entity,
plaintiff's Complaint must plausibly allege facts showing the existence of a *de facto* RICO
enterprise.  <u>See</u> <u>Weaver v Boriskin</u>, 2017 WL 5201433, at *8.  In order to constitute such an
enterprise, the association of individuals must share a common purpose and plaintiff's
allegations must "detail any course of fraudulent or illegal conduct separate and distinct from the
alleged predicate racketeering acts themselves."  <u>First Capital Asset Mgmt., Inc. v. Satinwood,</u>
<u>Inc.</u>, 385 F.3d 159, 174 (2d Cir. 2004) (citations omitted).

Plaintiff has failed to detail illegal conduct "separate and distinct" from the alleged
racketeering acts.  Moreover, plaintiff has not made any allegations explaining the purported
enterprise's "hierarchy" and "organization," or describing how the individuals "functioned 'as a
continuing unit.'"  <u>Weaver v Boriskin</u>, 2017 WL 5201433, at *8 (citing <u>First Capital Asset</u>
<u>Mgmt., Inc. v. Satinwood, Inc.</u>, 385 F.3d at 174).  Indeed, here, plaintiff appears to allege an
enterprise between attorneys and the clients they represent in his Complaint.  However, as
already discussed in the Southern District's decision dismissing the claims in <u>Weaver v. James</u>, it

makes "little sense to assert that the attorney conducts the affairs of a distinct attorney-client enterprise," given the basic nature of the attorney-client relationship.  Weaver v. James et al., 2011 WL 4472062, at *3.  As in Weaver's past RICO filings, the instant Complaint merely concludes that defendants are an enterprise (see, e.g., Compl. ¶ 237, 241, 245), without providing any evidence of association or organization.

Even if we assume, as the Second Circuit did in Weaver v. Boriskin, that Weaver alleged sufficient facts to show that the defendants constituted an enterprise, Weaver has failed to allege "at least two predicate acts," failed to show that the predicate acts are related, or failed to allege that those acts amount to, or pose a threat of, continuing criminal activity.  751 Fed. App'x at 98; see also Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997). "[A]llegations of frivolous, fraudulent, or baseless litigation activities – without more – cannot constitute a RICO predicate act."  Kim v. Kimm, 884 F.3d 98, 104 (2d Cir. 2018).  Here, Weaver alleges that attorney John James "filed an order to show cause for stay of eviction," including a fake lis pendens, "filed a notice of appearance . . . and a notice of appeal," and made "false allegations to the Court."  (Compl. ¶¶ 231, 233, 234).  These are exactly the kind of allegations that do not constitute a RICO predicate act.[4]

Plaintiff, however, also alleges that defendants jointly schemed to "defraud plaintiff of his rent."  (Id. ¶ 242).  To support that allegation, plaintiff alleges that defendant Siegel appeared in a foreclosure action and "abused the legal process;" that defendant Maloney made false

---

[4] Moreover, these exact claims – those against attorney James – were already litigated and are therefore barred by collateral estoppel.  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288-89 (2d Cir. 2002) (parties cannot "relitigat[e] in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding"); see also Weaver v. Schiavo, 2020 WL 496301, at *7 (S.D.N.Y. Jan. 30, 2020) ("Although Weaver has roped in some additional defendants and makes some new allegations . . . his claims still rise and fall on issues previously resolved in the foreclosure action" and are thus collaterally estopped).

statements to the police; and that defendants Elma Gibbs, Shelly Gibbs, and Parker executed false affidavits or made false statements to the courts. (Id. ¶¶ 236, 238, 239, 240, 242). Again, these allegations are merely conclusory: plaintiff has not provided any factual support that defendants' conduct regarding the foreclosure action and his arrest outside the subject property were for the purpose of defrauding plaintiff of rent owed to him. Moreover, all of plaintiff's allegations revolve around the same initial foreclosure action – at issue in numerous prior cases before this Court – and amount to nothing more than plaintiff's allegations of "fraudulent filings." Weaver v Boriskin, 2017 WL 5201433, at *9. As such, plaintiff has failed to allege more than isolated activity against him. Accordingly, this Court respectfully recommends that plaintiff's RICO action be dismissed for failure to state a claim upon which relief can be granted.

C. The Court Should Decline to Exercise Jurisdiction Over Plaintiff's State Law Claims.

Plaintiff's remaining claims are based on state law. Count One alleges violations of New York Judiciary Law § 487(1). (Compl. ¶¶ 181-197). Count Three alleges negligence and violations of New York Penal Law. (Id. ¶¶ 207-227). Count Five alleges that defendants illegally converted plaintiff's property by "interfer[ing] with plaintiffs [sic] legal ownership and further exercis[ing] dominion over the property, in derogation of plaintiffs rights." (Id. ¶ 262). Count Six alleges intentional infliction of emotional distress. (Id. ¶¶ 268-278).

"Although the dismissal of state law claims is not required when the federal claims in an action are dismissed, a federal court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3)." Eskenazi–McGibney v. Connetquot Cent. Sch. Dist., No. 14 CV 1591, 84 F. Supp. 3d 221, 237 (E.D.N.Y. Feb. 6, 2015) (citation and quotation marks omitted). When determining whether to exercise supplemental jurisdiction, a court considers "the values of judicial economy, convenience, fairness, and comity." Carnegie-

20

Mellon Univ. v. Cohill, 484 U.S. 343, 350, n. 7 (1988).  The balance of these factors points

towards declining to exercise supplemental jurisdiction here, where all of the federal claims may

be dismissed before trial.  Lundy v. Catholic Health System of Long Island Inc., 711 F.3d 106,

117-18 (2d Cir. 2013) (holding that: "Once all federal claims have been dismissed, the balance of

factors will usually point toward a declination").  Indeed, in this case, the Court is recommending

dismissal of all of the federal and state claims even before issue has been joined.  Moreover,

because the federal claims here are "insubstantial in a jurisdictional sense," United Mine

Workers v. Gibbs, 383 U.S. 715, 726 (1966), this Court respectfully recommends dismissal of

plaintiff's federal claims and that the court also decline to exercise supplemental jurisdiction

over plaintiff's state-law claims.

## CONCLUSION

For the reasons stated above, this Court respectfully recommends dismissal of the action

for lack of subject matter jurisdiction.  Alternatively, the Court recommends that both of

plaintiff's federal claims be dismissed for failing to state a claim pursuant to Rule 12(b)(6).  In

either event, the Court recommends that the court decline to exercise jurisdiction over plaintiff's

state law claims.  As such, the Court respectfully recommends dismissal of plaintiff's lawsuit in

its entirety.  In light of the recommendation that the case be dismissed in its entirety, all

outstanding motions should likewise be dismissed.

Any objections to this Report and Recommendation must be filed with the Clerk of the

Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also

Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections

within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor

v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a

. . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
        September 21, 2020

                                        /s/ Cheryl L. Pollak
                                        Cheryl L. Pollak
                                        Chief United States Magistrate Judge
                                        Eastern District of New York